UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY LEE VOGELSANG,

     Petitioner,

  vs.

MIKE KNOWLES, Warden,

     Respondent.

Case No. 2:03-cv-00611-JKS (HC)

MEMORANDUM DECISION

   Gregory Lee Vogelsang has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner is currently serving a term of 355 years to life,[1] plus four years, in a California state prison after conviction if 27 counts, including violations of CAL. PEN. CODE §§ 207(b) (kidnaping a child for purposes of committing a lewd act), 288(a) (lewd act on a child), 664 and 207(b) (attempt to kidnap a child for purposes of committing a lewd act), 664 and 288(a) (attempt to commit a lewd act on a child), and 23 counts of 288(b)(1) (lewd act on a child with force or violence).  Petitioner admitted an allegation that rendered him ineligible for parole under CAL. PEN. CODE § 12203.066(a)(3), and the jury found true enhancement allegations that Petitioner committed sex offenses against two or more victims (CAL. PEN. CODE § 667.61(e)(5)), engaged in substantial sex with one victim (CAL. PEN. CODE § 1203.066(a)(8)), and committed offenses constituting serious felonies (Cal. Pen. Code § 1192.7(c)(6)).  Petitioner appealed his conviction and sentence to the California Court of Appeal, which affirmed in an unpublished decision.  The California Supreme Court denied review.  Petitioner also sought post-conviction

---

[1] Consisting of sentences of 25 years to life for the conviction of kidnapping a child for purposes of committing a lewd act and 22 consecutive sentences of 15 years to life for conviction of the counts of lewd acts upon a child by force. The court also sentenced defendant to an additional determinate term of four consecutive years on another count, staying two other determinate terms and running a third determinate term concurrent with the indeterminate term.

relief in the California Superior Court, which denied his petition. Subsequent petitions filed in the California Court of Appeal and Supreme Court were summarily denied.

The history of this case and the facts are well known to the parties and are set forth in detail in the opinion of the California Court of Appeals.  In the interests of brevity they are not repeated here except as necessary to an understanding of the decision of this Court.

The California Supreme Court denied review on direct appeal on July 11, 2001. Petitioner did not file a petition for certiorari with the U.S. Supreme Court and his conviction became final 90 days later, October 9, 2001.  *See Wixom v Washington*, 264 F.3d 894, 897 (9th Cir.2001).  June 4, 2002, Petitioner timely initiated his first habeas petition in the California Superior Court, which denied his petition with a written decision.  Subsequent petitions were timely filed in the California Court of Appeals and the California Supreme Court, which denied his petitions summarily, with the denial by the Supreme Court occurring March 19, 2002. Petitioner timely filed his original petition in this Court March 25, 2003.  Petitioner subsequently requested that this court "stay and abey" his petition while he exhausted his unexhausted claims before the California Supreme Court.  This Court granted that request.[2]  Petitioner filed his second habeas petition in the California Superior Court January 13, 2004,[3] which denied his petition.  Subsequent petitions to the California Court of Appeals and Supreme Court were summarily denied, with denial by the Supreme Court occurring June 8, 2005.[4]  On August 18, 2005, Petitioner filed an amended petition for relief in this Court.

---

[2] Respondent suggests that this was, perhaps, improvidently granted. *See Rhines v. Weber*, 544 U.S. 269 (2005).  While Respondent's position may have some measure of merit, given the decision of the California Supreme Court and its effect on the scope of review by this Court, discussed further below, it is unnecessary to address the issue.

[3] The Petition bears a filing date of February 3, 2004.  Petitioner disputes this filing date asserting that the petition was deemed filed January 13, 2004, when he handed his petition to the prison authorities for mailing.  For the purpose of ruling on the petition at bar, this Court accepts the mailing date as the filing date.  *See In re Jordan*, 13 Cal.Rptr 878, 880 (Cal.1992) (holding that the "prison delivery" rule applies in California).

[4] Under California procedure, each successive habeas petition in the Court of Appeals and the Supreme Court is a new petition.  For the purposes of this decision, the Court refers to the first round habeas petitions as the "first" and the second round of habeas petitions as the "second" petition.

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decisions of the California courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court, *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004), which in this case was that of the California Court of Appeal on direct appeal and the California Superior Court on the first state habeas petition.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In the original petition filed in this Court, Petitioner raised 16 claims.  In his amended petition, Petitioner asserts several additional claims raised for the first time in the state courts in his second habeas petition.[5]  The California Supreme Court, in denying Petitioner's second petition for habeas relief, cited *In re Clark* (1993), 5 Cal.4th 750 [71 Cal.Rptr.2d 509] and *In re Robbins* (1998) 18 Cal.4th 770, 780 [77 Cal.Rptr.2d 153].  Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law

---

[5] In his traverse, Petitioner raises for the first time the admissibility of the MDIC tapes under *Crawford v. Washington*, 541 U.S. 36 (2004).  The Court ordinarily does not consider claims raised for the first time in a traverse.  In addition, a claim based upon a new rule must be brought within one year of the date the rule was first announced by the U.S. Supreme Court.  28 U.S.C. § 2244(d)(1)(C); *see Dodd v. United States*, 545 U.S. 353 (2005).  Even if the court were to consider the traverse as relating back to the date the amended petition was filed, it would be untimely.  Because the *Crawford* claim is based on different conduct, transaction, or occurrence than the original petition (Petitioner did not challenge admissibility of the MDIC tapes, only the response made by the trial court to a question by the jury during deliberations with respect to the MDIC tapes), the claim does not relate back to the original filing. *Mayle v. Felix*, 545 U.S. ___, 125 S.Ct. 2562, 2571–2573 (2005); RULES—SECTION 2254 CASES, Rule 2(c).  Accordingly, the court need not reach the issue of whether *Crawford* applies retroactively to cases on collateral review.  *See Bockting v. Bayer*, 399 F.3d 1010 (9th Cir.2005), *cert. granted sub nom, Whorton v. Bockting*, 126 S.Ct. 2017 (2006) (mem.).

ground that is independent of the federal question and adequate to support the judgment."
*Coleman v. Thompson,* 501 U.S. 722, 729 (1991).  This Court may not reach the merits of
procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable
state procedural rules in raising the claims * * *." *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).
Under *Clark-Robbins*, a successive or delayed petition for habeas relief will not be considered by
California courts unless certain specified grounds are met.  By citing *Clark* and *Robbins* in
denying his second petition, the California Supreme Court explicitly signified that Petitioner had
not established sufficient grounds to excuse his failure to file his second habeas petition timely.
This is an adequate independent state procedural ground precluding further review by this Court
on a petition for relief under § 2254. *Bennett v. Mueller,* 322 F.3d 573, 581 (9th Cir.2003).

Thus, the Court will address on the merits only those claims for relief properly raised in
the original petition for relief filed in this Court. (1) sufficiency of the evidence to support count
9, involving Chris S.; (2) sufficiency of the evidence to support count 10, involving Chris S.; (3)
sufficiency of the evidence to support 12 counts of lewd conduct involving Jesse Z. and Josh H.;
(4) sufficiency of the evidence to support counts 2 and 3, involving Jesse Z.; (5) cruel and
unusual punishment under state (California) law; (6) cruel and unusual punishment under federal
law; (7) sentencing error (multiple victim circumstance);[6] (8) ineffective assistance of appellate
counsel regarding the *Marsden* motions;[7] (9) ineffective assistance of appellate counsel
regarding lack of jurisdiction; (10) denial of the *Marsden* motion; (11) amendments to the
information made after the trial began; (12) ineffective assistance of trial counsel for failure to
file motions; (13) ineffective assistance of appellate counsel for failure to raise issue of jury
instructions; (14) ineffective assistance of appellate counsel regarding evidence of other crimes;
(15) ineffective assistance of trial counsel for failing to call witnesses and present other evidence
that would establish that Petitioner was not guilty of the crimes for which he was charged; and
(16) ineffective assistance of appellate counsel for failing to raise denial of a motion for mistrial
related to the form of questions propounded by the prosecutor at trial.

---

[6] This claim was omitted in the amended petition and is, therefore, deemed abandoned.

[7] *People v. Marsden*, 84 Cal.Rptr. 156 (Cal.1970).  Used by the California courts to refer to the procedure under which a defendant seeks to replace appointed counsel for inadequate representation.

On direct appeal, Petitioner attacked the sufficiency of the evidence (claims 1 to 4).  The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original).  This court must, therefore, determine whether the California Court of Appeal unreasonably applied *Jackson* in upholding Petitioner's conviction in this case.  In making this determination, it is irrelevant whether the state court cites the Supreme Court precedents, or is even aware of them; the standard is met "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  The California Court of Appeal, applying the state law equivalent of the *Jackson* standard, affirmed the verdict stating:

> Defendant contends there is insufficient evidence to support the convictions involving Chris S., Jesse Z., and Josh H. When the sufficiency of evidence is challenged, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

> An attempt to commit a crime is itself a crime. (§ 664.)  An attempt consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission. (*People v. Carpenter* (1997) 15 Cal.4th 312, 387.) The act must go beyond mere preparation, and it must show that the perpetrator is putting his or her plan into action, but the act need not be the last proximate or ultimate step toward commission of the substantive crime." (*People v. Kipp* (1998) 18 Cal.4th 349, 376.)

> ### Chris S., Attempted Lewd Conduct

> The record shows that defendant invited Chris S. to help him pick out a gift for his son, purchased a toy and soda for Chris, and arranged to meet him at a school. At the school defendant offered to take Chris to the movies or to play video games with him. When Chris refused, defendant offered Chris $20 to allow defendant to "touch it." Relying exclusively on *People v. LaFontaine* (1978) 79 Cal .App. 3d 176 (*LaFontaine*), defendant argues this conduct was insufficient to sustain a conviction for attempted lewd act upon a minor in violation of sections 664 and 288.[2]  There, the defendant, after picking up a child hitchhiker, offered him a sum of money for a sexual favor; when the victim declined the offer and left, no further attempt was made to complete the lewd act. (79 Cal.App.3d at pp. 179-180.) The court held that the solicitation did not go beyond mere preparation,

and therefore defendant's actions did not constitute an attempt. (*Id*. at pp. 182-183.)

However, as pointed out recently in *People v. Ansaldo* (1998) 60 Cal.App.4th 1190, LaFontaine stands for the simple proposition acts of solicitation alone are insufficient to constitute attempts. (*Id*. at p. 1196.) Here, there is substantially more than a solicitation. Defendant approached Chris as he was riding his bicycle in front of a store and enticed him with toys and a soda. He then lured Chris to another, more secluded location, where he offered to take him to see movies or play video games. When the last offer was refused, defendant solicited Chris to commit a lewd act.

---

[2]      Section 288, subdivision (a) states: "Any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ." (Footnote in original)

---

As *Ansaldo* notes at 60 Cal.App.4th at page 1196, the holding of *LaFontaine* must be reconsidered in light of the California Supreme Court's subsequent decision in *People v. Memro* (1985) 38 Cal.3d 658.

In *Memro*, the court found the evidence sufficient to sustain defendant's conviction for attempted lewd conduct with a minor where the evidence showed that defendant, intending to photograph a boy in the nude, ushered him into his bedroom to watch strobe lights and stayed nearby, when the victim suddenly announced his intended departure. In language pertinent here, *Memro* stated: "'[w]henever the design of a person to commit a crime is clearly shown, *slight acts* done in furtherance of that design will constitute an attempt, . . .' " (*Memro , supra*, 38 Cal.3d at p. 698, italics added.)

Upholding a conviction for attempted lewd conduct, *Ansaldo* concluded "[t ]here can be no doubt, based on [defendant ]'s strikingly similar methods of operation involving all three victims, that his intent to commit lewd and lascivious acts on the second victim was clearly shown." (60 Cal.App.4th at p. 1197.)

*Ansaldo* is especially pertinent here. Because of defendant's "strikingly similar" conduct with respect to victims Chris S. and Jesse Z. (on whom defendant had completed lewd acts), defendant's criminal intent toward Chris was clear. Thus, only slight acts in furtherance of that design were necessary to constitute an attempt. A jury thus could find that procuring Chris's help in buying a gift, buying him toys and soda, arranging to meet him at school, and luring him with offers to watch movies or play video games constituted "the 'actual commencement'" of defendant's plan to engage in lewd conduct. (*Memro*, *supra*, 38 Cal.3d at p. 699.)

### Chris S., Attempted Kidnapping

Defendant contends there is insufficient evidence of a "direct but ineffectual act" toward violating section 207[3] and that at most the record supports a preparation to kidnap Chris S. We do not agree.

Defendant invited Chris S. to help him pick out a gift for his son. He then purchased a toy and soda for Chris before asking him to meet him at a school. He offered to take Chris to the movies or to play video games. As discussed above, based on defendant's similar conduct with other victims, the jury was free to conclude that but for Chris's resistance, defendant would have taken him to a remote location to carry out the desired lewd acts. Substantial evidence supports the conviction for attempt to kidnap a minor by persuasion or enticement.

---

[3] Section 207 provides, in pertinent part: "Every person, who for the purpose of committing [a lewd act], hires, persuades, entices, decoys, or seduces by false promises, misrepresentations, or the like, any child under the age of 14 years to go out of the country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (b).) (Footnote in original.)

---

### Jesse Z., Lewd Conduct by Force

Pointing out that the "force" contemplated by section 288, subdivision (b)[4] requires the prosecution to show the defendant used "physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself" (*People v. Cicero* (1984) 157 Cal.App.3d 465, 474), defendant claims this standard was not met with respect to victim Jesse Z. because there is no evidence of a struggle or an attempt to physically overpower the victim.

After Jesse was lured from Qzar on the ruse of picking out a toy, defendant took Jesse to defendant's home and engaged in lewd acts there and in the car, and attempted to photograph Jesse nude. According to Jesse's statement to the sheriff's department, when Jesse refused to remove his pants for defendant's requested photo shoot, defendant "grabbed [Jesse's] groin area and tried to take off his belt"[5] After leaving defendant's house and while in the car, defendant "kept reaching over and rubbing [Jesse's] leg and his groin area" although Jesse moved defendant's hand away several times. The above evidence overwhelmingly shows defendant used force substantially greater than and different from that necessary to commit the lewd act.

---

[4] Section 288, subdivision (b) (1) states: "Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person is guilty of a felony and shall be punished by imprisonment in the state prison . . . ." (Footnote in original.)

[5] Defendant makes much of the fact that Jesse's statement to the sheriff, two days after the molestation, was inconsistent with his testimony at trial. The point gets him nowhere. As the sole judge of the credibility of the witnesses (Evid. Code, § 312) , "[t]he jury was

entitled to accept portions of a witness's testimony and to disbelieve other portions."
(*People v. Ceja* (1994) 26 Cal.App.4th 78, 86.) (Footnote in original.)

### Josh H., Lewd Conduct by Force

Defendant contends "force" was not established with respect to Josh because there is no evidence of a struggle or an attempt to physically overpower his victim. He is wrong.

Josh testified: "I tell him to stop. And then he . . .would, like, stop for, like, a little while, and then he would try to do it again. [¶] . . . [¶]. . . [I would] get his hand away, but he kept on doing it." In addition, in answer to the prosecution's question: "When [defendant] would touch you and you would tell him to stop, did you ever do anything physically to him to try to make him stop?" Josh answered, "Get his hand away. "

Case law establishes this testimony was sufficient to support the jury's implied finding of force. (*People v. Cicero, supra*, 157 Cal.App.3d at p. 486 [sufficient force when defendant, while carrying his two victims as part of a "game," opened and closed his hands on the girls' crotches]; *People v. Bolander* (1994) 23 Cal.App.4th 155, 161 [sufficient force when defendant pulled his victim's pants down, bent him over, and brought his waist toward the defendant]; *People v. Bergschneider* (1989) 211 Cal .App. 3d 144, 154 [sufficient force when the victim tried unsuccessfully to push defendant's head away as he attempted to orally copulate her] .)

We therefore reject defendant's claim that the evidence was insufficient to support the element of force as to Josh.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n. 16.  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review. *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir.2005).

In the case at bar, the California Court of Appeal determined that the evidence was sufficient to establish the necessary elements of the crime as defined by California statutes and applied by the California courts.  This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case; *i.e*., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable as required by *Lockyer–Williams*.  Petitioner is not entitled to relief under Claims 1 through 4, inclusive.

With respect to claims 5 and 6, alleging cruel and unusual punishment, the California Court of Appeal concluded that Petitioner's sentence did not violate either the state or federal prohibitions on cruel and unusual punishment. To the extent Petitioner alleges a violation of the California Constitution, it is beyond the purview of this Court's jurisdiction to review the interpretation of state law.  This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (Citations and internal quotation marks omitted)).  With respect to his challenge under the Eighth Amendment of the U.S. Constitution, the California Court of Appeals held:

### Federal Standard

Defendant's challenge under the Eighth Amendment to the United States Constitution fares no better. Under the federal standard, the question is whether the sentence is "grossly disproportionate' to the crime." (*Harmelin v. Michigan* (1991) 501 U.S. 957, 1001 [115 L.Ed.2d 836, 869]; *United States v. Bland* (9th Cir. 1992) 961 F.2d 123, 129.) While defendant's sentence of 355 years to life is severe, it is not grossly disproportionate to his crimes and does not constitute cruel or unusual punishment. As the Ninth Circuit observed in *Cacoperdo v. Demosthenes* (9th Cir. 1994) 37 F.3d 504, 507-508, upholding consecutive sentences on 10 counts of sexually abusing three stepdaughters, "[s]exual molestation of a child is a very serious offense." Here defendant was convicted on 27 counts of molestation and kidnapping and the record reflects a pattern of conduct that continued over several years. The impact of these crimes on the lives of the victims and their families is severe and far-reaching. The danger to society is heightened by defendant's repetitive and predatory conduct, the planning and sophistication of his crimes, the youth and vulnerability of his victims, and the infliction of serious psychological harm.

Although Petitioner received a severe sentence, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Solem v. Helm,* 463 U.S. 277, 289-90 (1983) (internal alternations and emphasis omitted).  The Ninth Circuit has held that "'only extreme sentences that are grossly disproportionate to the crime' violate the Eighth Amendment." *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 Cir.1994) (quoting *United States v. Bland,* 961 F.2d 123, 129 (9th Cir.1992). To determine proportionality, a court must examine: "(1) 'the gravity of the offense and the harshness of the penalty'; (2) 'the sentences imposed on other criminals in the same jurisdiction'; and may include (3) 'the sentences imposed for commission of the same crime in other jurisdictions.'" *Cacoperdo,* 37 F.3d at 507 (quoting *Solem,* 463 U.S. at 290-92).  In its opinion, the California Court of Appeal reasoned (emphasis in the original):

> Contrary to defendant's assertion, his prior criminal history, while not consisting of sex offenses, demonstrates an increasing propensity for crime. In 1988 he was convicted of assault and battery, in 1996 of vandalism, and in 1997 of assault on a peace officer; at the time of trial, he was facing a charge of methamphetamine possession. Defendant was anything but a law-abiding citizen.

> Defendant claims, however, that his current offenses were not serious: he especially notes the absence of violence, physical harm to the victims, or use of a weapon. He thus reasons that, as applied to him, his sentence is cruel and unusual.

> Defendant ignores the fact that he was convicted of multiple acts perpetrated on five different young victims; two of the victims were strangers to the defendant and selected due to their youth and vulnerability as prey; others were placed in the defendant's care and custody. The repetitive and predatory nature of his acts and the vulnerability of his victims indicates defendant was a serious danger to society. Thus, under the first factor, the punishment does not appear disproportionate to the crimes.

> While conceding a sentence of 15 years to life or 25 years to life for a single violation might not be cruel or unusual, defendant characterizes his 355-years-to-life sentence as "tantamount to a sentence of life without the possibility of parole," which makes the punishment equivalent to such heinous crimes as murder, kidnapping with great bodily harm, and attempted train wrecking. Defendant overlooks the fact that his is a *cumulative* punishment resulting from the commission of *numerous offenses on multiple victims.* Thus, "[t]he penalties for single offenses, such as those defendant cites, cannot properly be compared to those for multiple offenses . . . ." (*People v. Crooks* (1997) 55 Cal.App.4th 797, 807.)

Defendant was punished for 27 separate offenses involving five very young and vulnerable victims, occurring over a period of several years. It is the repetitive nature of defendant's conduct that resulted in his severe sentence.

The Legislature is justified in choosing to treat repeat child molesters differently than other types of offenders for sentencing purposes; "the Legislature was well within its constitutional prerogatives when it mandated full-term consecutive sentences for the type of sex crimes we see in this case." *(People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 531-532 [upholding 129-year sentence consisting of 22 consecutive midterm sentences for a variety of sex crimes committed against stepdaughter].) Thus, defendant's sentence is not disproportionate when compared to punishments for other, more serious crimes in California.

In reviewing sentences imposed under state law, deference to state legislatures is warranted "unless [the court is] confronted with a rare case of a grossly disproportionate sentence." *Cocio v. Bramlett,* 872 F.2d 889, 892 (9th Cir.1989) (citations omitted).  As the California Court of Appeals noted, in this case, Petitioner has been convicted of 27 separate counts of sexual molestation involving five separate victims over a period of several years. Petitioner argues before this Court as he did the California Court of Appeals that because there was no serious *physical* injury his sentence is disproportionate.  What Petitioner still fails to consider is, as the California Court of Appeals specifically recognized, the potentially devastating impact of *psychological* injury from the acts of which he was convicted.  Indeed, sexual molestation of minors is a very serious crime having a potentially extraordinarily severe impact on its victims. *Caroperdo*, 37 F.3d at 508.  In light of the gravity of his criminal conduct and the lengthy duration over which it occurred, Petitioner's sentence, although it is, as Petitioner asserts, the functional equivalent of life without the possibility of parole, does not give rise to an inference of gross disproportionality. *See, e.g., Hamelin v. Michigan*, 501 U.S. 957 (1991) (upholding a sentence of life without possibility of parole for conviction of 672 grams of cocaine); *Rummel v. Estelle*, 445 U.S. 263 (1980) (upholding a life sentence for a recidivist convicted of fraudulent use of a credit card for $80, passing a forged check for $28.36, and obtaining $120.75 under false pretenses); *Bland* (upholding a life sentence without possibility of parole for being a felon in possession of a firearm).

This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States" or was "based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor

can this Court find that the California Court of Appeal unreasonably applied the correct legal

principle to the facts of the prisoner's case; *i.e.*, the state court decision was more than incorrect

or erroneous, its application of clearly established law was objectively unreasonable within the

scope of *Lockyer–Williams*.  Petitioner is not entitled to relief under claims 5 and 6.

The remaining claims properly considered by this Court were timely raised in the first

state-court habeas petition.  With respect to the alleged *Marsden* errors (claims 8 and 10), the

California Superior Court in denying his state-court habeas petition held:

Petitioner's first claim is that appellate counsel was ineffective in failing to raise on the appeal the issues of two of petitioners Marsden motions at trial.

Petitioner claims that with regard to one motion, made on January 21, 1999 and heard on January 22, 1999, appellate counsel failed to inquire as to the complaint of the motion, which resulted in a silent record on appeal making intelligent appellate review impossible and requiring reversal. Petitioner, however, misunderstands the gist of an ineffective assistance of counsel claim. To make such a claim, petitioner must show that counsel was ineffective, and that but for the ineffectiveness there is a reasonable probability that a different result would have occurred (Strickland v. Washinqton (1984) 466 U.S. 668). To be successful on this claim, petitioner would need to attach reasonably available documentary evidence of what transpired at the Marsden hearing, how it was legally erroneous, and how he would have succeeded on appeal had appellate counsel raised whatever viable issue there was regarding the hearing. Petitioner failed to do so, thereby requiring denial of the claim.

Petitioner claims that with regard to the other motion, made on May 19, 1999, he was "forced" into having a court-appointed trial attorney that petitioner felt was inadequate to represent him at trial. Petitioner claims that he informed the trial court that he was filing a 1awsuit against the attorney, but that the court asked the attorney if that would affect the attorney's ability to represent petitioner and the attorney. [*Sic*] Although petitioner does not state it in the petition, the transcript for the hearing shows that when the attorney was asked this question, the attorney answered "no," that it would not affect his ability to represent petitioner.

Petitioner does not demonstrate that any error was committed by the trial court in denying the Marsden motion on May 19, 1999. The transcript for that proceeding does not evidence anything improper, and petitioner fails to state what was erroneous about the ruling. As there was nothing to raise on appeal, appellate

counsel was not ineffective in failing to raise any issue regarding the May 19,
1999 Marsden motion (*In re Bower* (1985) 38 Cal.3d 865).

In his petition before this court, Petitioner fails to make any greater showing that he did
before the California Superior Court.  The critical issue is whether, if the issue were raised on
appeal, would the California appellate courts have found the trial judge erred in denying
Petitioner's *Marsden* motion?  Under California law, rulings on *Marsden* motions are reviewed
for an abuse of discretion. *People v. Berryman*, 25 Cal.Rptr.2d 867, 879 (Cal.1993), *overruled
on other grounds*, *People v. Hill*, 72 Cal.Rptr.2d 656 (Cal.1998).  In *People v. Memro*, 47
Cal.Rptr.2d 219, 257 (Cal.1995), the California Supreme Court stated (citations and internal
quotation marks omitted):

> The law governing a *Marsden* motion is well settled. When a defendant seeks to
> discharge his appointed counsel and substitute another attorney, and asserts
> inadequate representation, the trial court must permit the defendant to explain the
> basis of his contention and to relate specific instances of the attorney's inadequate
> performance. A defendant is entitled to relief if the record clearly shows that the
> first appointed attorney is not providing adequate representation or that defendant
> and counsel have become embroiled in such an irreconcilable conflict that
> ineffective representation is likely to result.

Petitioner's *Marsden* motion was based upon basically two points: (1) an allegation of a
conflict of interest; and (2) a general dissatisfaction with the level of representation he was
receiving.  In order to obtain a reversal on the basis of a conflict of interest on appeal a defendant
must establish both an actual conflict and an adverse impact on counsel's performance. *Mikens v.
Taylor*, 535 U.S. 162, 166, 172–175 (2002); *accord, People v. Cornwell*, 33 Cal.Rptr.3d. 1,
19–20 (Cal.2005).  Petitioner has failed to show either.  Petitioner fails to identify with any
specificity the nature of trial counsel's conflict.  Petitioner stated at the *Marsden* hearing that "I
will file a lawsuit against him."  When asked by the court if that would affect counsel's ability to
represent Petitioner, counsel answered "no."  The mere fact that Petitioner threatened to file
lawsuit against defense counsel is not sufficient grounds to relieve counsel.  *See People v.
Horton*, 47 Cal.Rptr.2d. 516, 536–37 (Cal.1995).  That the trial court judge accepted counsel's
assurance that it would not affect counsel's performance does not constitute an abuse of
discretion. *People v. Smith*, 25 Cal.Rptr.2d 122, 130–131 (Cal.1993).

A review of the transcript of the May 19, 1999 *Marsden* hearing reveals nothing more than a disagreement with the defense tactics being pursued by counsel.  This is patently insufficient grounds to discharge an appointed attorney.  As the California Supreme Court held in *People v. Crandal*, 251 Cal.Rptr 227, 238 (Cal.1988) (citations omitted):

> A disagreement concerning tactics is likewise insufficient to compel the discharge of appointed counsel, unless it signals a complete breakdown in the attorney-client relationship. In determining whether defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result, trial courts properly recognize that if a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law.

The Sixth Amendment does not demand that a criminal defendant have a "meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 13–14 (1983).  The Supreme Court further elucidated the Sixth Amendment principles in *Wheat v. United States,* 486 U.S. 153, 159 (1988) when it stated (citations and internal quotation marks omitted) (emphasis added):

> [I]n evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such. Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is *to guarantee an effective advocate for each criminal defendant* rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

Contrary to Petitioner's assertions the trial court conducted a proper *Marsden* hearing.[8] Petitioner was permitted to set forth the reasons for his *Marsden* motion and defense counsel responded to them. "To the extent there was a credibility question between defendant and

---

[8] The Court rejects Petitioner's claim to the extent that it alleges that he is entitled to relief because the first *Marsden* hearing was inadequate.  First, the record as to the first *Marsden* hearing is incomplete.  Second, to the extent that the inadequacies, if any, of the first *Marsden* hearing may have been of a Constitutional magnitude, *see e.g., Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir.2000) (en banc), they were cured by the second hearing in which the record shows Petitioner was given a full and complete opportunity to present his grievances against his appointed counsel, including, contrary to Petitioner's assertions that the court failed to inquire into his complaints from the first *Marsden* hearing, the any matters that were presented at that hearing.  The usual remedy for a failure to hold a *Marsden* hearing is to remand the case to the trial court for a post-trial *Marsden* hearing. *Schell*, 218 F.3d at 1021 n. 3.

counsel at the hearing, the court was entitled to accept counsel's explanation." *Smith* (internal quotation marks and citations omitted).  The court impliedly found there were no irreconcilable differences between Petitioner and his counsel. Under these circumstances, the Court finds that the trial court made a sufficient inquiry into the grounds for defendant's *Marsden* motion to enable it to properly exercise its discretion.

The California court clearly applied the correct standard (*Strickland*) and this Court can not say that the California Superior Court unreasonably applied the correct legal principle to the facts of the prisoner's case; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable within the scope of *Lockyer–Williams*.  Petitioner is not entitled to relief under claims 8 and 10.

As to claim 9, the so-called jurisdictional issue was in reality one of venue under California law.  The California Superior Court in denying his state habeas petition held that venue was proper in this case under California law and, therefore, Petitioner could not meet the *Strickland* standard.  Other than *Strickland*, Petitioner does not raise any issue of federal law or under the U.S. Constitution.  As noted above, it is not the province of this Court to review issues of state law in a federal habeas proceeding.  Consequently, this Court can not say that the California Superior Court unreasonably applied the correct legal principle to the facts of the prisoner's case; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable within the scope of *Lockyer–Williams*. Petitioner is not entitled to relief under claim 9.

On claim 11, the amendments made to the information, in denying his state habeas petition, the California Superior Court held:

> Petitioner's next claim is that he was denied due process on July 29, 1999, when the trial court allowed the prosecutor to amend the information to change the dates and locations in Counts XI1 through XXI. He claims that this occurred during trial, and that defense counsel was not given the opportunity to investigate the "new" allegations, thereby denying him a fair trial.
>
> The issue is one that could have been, but was not, raised on appeal, and therefore is barred on habeas corpus review (In re Dixon (1953) 41 Cal.2d 756, reaffirmed in In re Harris (1993) 5 Cal.4th 813, 829). The only exceptions to this procedural bar are: (1) if the claim is based on constitutional error that is both clear and fundamental, and that strikes at the heart of the trial process; (2) if the

claim is now couched in ineffective assistance of counsel terms; (3) if the court lacked fundamental jurisdiction over the petitioner or the subject matter; (4) if the Court acted in excess of its jurisdiction and the issue is strictly a legal one not requiring a redetermination of the facts underlying the claim; or (5) there has been a change in the law affecting the petitioner (Harris, supra, 5 Cal.4th 813, 834, 834 fn. 8, 836, 840-841, 841; In re Antazo (1970) 3 Cal.3d 100, 108 [exceptions to Dixon rule are same as those to Waltreus rule]). Petitioner does not show that this claim qualifies for any of these exceptions.

As noted above, a petitioner who has defaulted on his claims in state court is barred from raising them in federal court so long as the default is pursuant to an independent and adequate state procedural rule.  The denial by the California Superior Court on the basis of *Dixon* is an adequate independent state ground precluding further review in a federal court.  *See Bennett*, 372 F.3d at 582–583.  Petitioner is not entitled to relief under claim 11.

With respect to his twelfth claim, Petitioner presents somewhat of a hodge-podge of asserted inadequacies of trial counsel.  In denying his state habeas petition, the California Superior Court held:

> Petitioner's next claim is that his trial counsel was ineffective in failing to fully investigate his case and in failing to communicate with petitioner fully. Petitioner, however, fails to set forth what such investigation and communication would have uncovered that would have been reasonably probable to have made a difference in the outcome of the trial (Strickland, supra; In re Swain (1949) 34 Cal.2d 300), supported by reasonably available documentary evidence or affidavits (In re Harris, supra, 5 Cal.4th 813. 827 fn. 5 ). As such, the claim fails.

> Petitioner's next claim is that his trial counsel was ineffective in failing to file a pretrial motion challenging the venue of Counts XII through XXI. As explained above, such a motion would have been unsuccessful, therefore no ineffective assistance of counsel ensued. The claim fails under Strickland and Bower.

> Petitioner's next claim is that his trial counsel was ineffective in failing to raise the issue of cruel and unusual punishment after petitioner was sentenced to 355 years to life. Petitioner, however, did raise the cruel and unusual punishment issue on appeal, and the Third District Court of Appeal rejected the claim. As such, any attempt of trial counsel to have raised the claim would have been unsuccessful. There was no ineffective assistance of counsel. The claim fails under Strickland and Bower.

> Petitioner's next claim is that trial counsel was ineffective in failing to subpoena witnesses favorable to his defense. Petitioner, however, fails to set forth what those witnesses would have testified to had they been called, that would

have been reasonably probable to have made a difference in the outcome of the trial (<u>Strickland, supra</u>; <u>In re Swain, supra</u>), nor does he attach any affidavits from such witnesses in this regard (<u>In re Harris, supra</u>). As such, the claim fails.

Petitioner's next claim is that trial counsel was ineffective at sentencing in failing to present mitigating evidence. Again, petitioner fails to set forth what mitigating evidence could have been presented that would have been reasonably probable to have made a difference in the outcome of the sentence (<u>Strickland, supra</u>; <u>Swain, supra</u>), nor does he attach reasonably available documentary evidence in this regard (<u>Harris, supra</u>). As such, the claim fails.

In his thirteenth claim, Petitioner raises an ineffective assistance of appellate counsel for failing to raise on appeal the issue of allegedly improper jury instructions given in response to a inquiry by the jury made during deliberations.  In denying his state habeas petition the California Superior Court held:

Petitioner's next claim is ineffective assistance of appellate counsel in failing to raise a challenge to the jury having been informed by the trial court that "the transcripts were not evidence" in response to a jury request to review MDIC transcripts. Petitioner complains that the trial court erred in informing the jury that the videotapes of the interviews, and not the transcripts of the interviews, were the evidence. Petitioner also complains that the trial court erred in failing to also tell the jury that the testimony of the alleged victims was also evidence in the case.

Petitioner mischaracterizes what occurred. The jury had sent the court a request as follows: "We would like to review the MDIC transcript, if this is not allowed due to the transcript not being evidence, then we request a VHS tape player and a TV/monitor to review the MDIC video tapes." The court responded by providing the jury with both a TV/VHS player and the MDIC transcripts, and with a note stating: "Remember that the MDIC transcripts are not evidence, the video tapes of the MDIC interviews are the evidence."

There was nothing improper in the court's response. The court supplied the jury with both the videotape and a videotape player, and the transcript so that the jury could use the transcript as a guide as it viewed the videotape. The transcript was only that, a guide, and the videotape alone was the evidence. The underlying file for Case No. 98F00524 does not show that the transcript was ever admitted as evidence in the case, and petitioner does not attach to the petition any reasonably available documentary evidence from the trial, such as a portion of trial transcript, to show that the transcript was ever moved into evidence and allowed to be admitted as actual evidence in the case. As such, the trial court's statement to the jury was a correct statement.

Even if it were incorrect, petitioner fails to show prejudice. The jury was able to review the videotape with the assistance of the transcript, to determine what was actually said on the videotape. Whether the transcript was "evidence" or "not evidence" made no difference in the outcome of the trial. Thus, any failure of trial counsel to object to the courts response did not result in prejudice. The claim therefore fails under <u>Strickland</u> and <u>Bower</u>.

Petitioner's next claim is that appellate counsel was ineffective in failing to raise on appeal another court response to a jury question. Specifically, petitioner takes issue with the response to the jury's confusion and concern regarding the multiple lewd act charges and how they were supposed to determine the number of counts.

The court had responded that how the number of counts as to each victim had been determined was irrelevant to the jury's task, that generic pleading was permissible, and that the jury's task was first to determine whether the jury is convinced beyond a reasonable doubt that at least one lewd act occurred during the time frame alleged and if so, to determine how many separate incidents occurred within the time frame. The court further instructed the jury that it would be incorrect to assume that if the jury found petitioner guilty of one count as to a particular victim that it should automatically find him guilty of all counts as to that victim.

Petitioner does not demonstrate how the court's response was erroneous in any way. It properly explained to the jury their task. As such, appellate counsel was not ineffective in failing to raise any issue regarding the response on the appeal. The claim therefore fails under <u>Strickland, supra,</u> and <u>Bower, supra</u>.

In claim 14, Petitioner asserts that appellate counsel inadequately represented him by failing to raise the issue of an allegedly improper allowance of evidence of uncharged crimes.  In denying the state habeas petition, the California Superior Court held:

Petitioner's next claim is that appellate counsel was ineffective in failing to raise on appeal that the trial court erred in allowing other crimes evidence to be admitted under Evid. Code §§1108 and 1101(b). Petitioner however, fails to detail which evidence was admitted and how the admission of that evidence violated Evid. Code §§ 1108 and 1101(b). As such, he does not demonstrate that appellate counsel was ineffective in failing to raise the issue on appeal. The claim fails under <u>Strickland</u>, <u>Swain</u>, <u>Harris</u>, and <u>Bower</u>.

Petitioner also claim that appellate counsel was ineffective in failing to challenge the Evid. Code §§ 1108 and 1101(b) admission because the prosecution did not timely file the motion for the admission. Petitioner, however, fails to demonstrate that the evidence was introduced in violation of Evid. Code § 1108(b) or Penal Code § 1054 et seq., which allow for a later discovery or seeking of admission of the evidence for good cause. It is petitioner's burden to

show this evidence, and the court will not engage in a fishing expedition in this regard. Further, petitioner fails to show that even if the evidence had not been admitted that there was a reasonable probability that the outcome of the trial would have been any different. As such, the claim fails under <u>Strickland</u>, <u>Swain</u>, <u>Harris</u>, and <u>Bower</u>.

In his fifteenth claim, Petitioner claims his trial counsel was ineffective for failing to call witnesses or present exculpatory evidence. The California Superior Court also rejected that claim.

Petitioner's next claim is that his trial counsel was ineffective in failing to call witnesses and to present log books from his employment to show that petitioner could not have been home on every single weekend as alleged by the victims. In support, petitioner attaches copies of the log book entries, to show which dates during the time period in question that he was working and out of town. He appears to be challenging Counts XII through XXI, which were the lewd acts committed on Josh H. who visited his home on weekends between August 1997 and January 1998 for Counts XII through XVI (five counts), and between September 1994 and May 1997 for Counts XVII through XXI (five counts) . He also appears to be challenging Counts XXII through XXXII, which were the lewd acts committed on his son, Matthew B., in his home on weekends between December 1995 and December 1997 (ten counts). That means that petitioner would need to show that the log books would have proven that he could not have committed acts on five different weekends between August 1997 and January 1998, on five different weekends between September 1994 and May 1997, and on ten different weekends between December1995 and December 1997.

The court may take judicial notice of a calendar from September 1994 through December 1997 (see Evid. Code § 452(g)).

The log books show only that petitioner had been driving out of town on the following weekends: November 5-6, 1994; October 28-25, 1995; January 20, 1996; January 26, 1996, a Friday, but only until 4:00 p.m., to Desert Hot Springs, California; February 10-11, 1996; September 14-15, 1996; October 19-20, 1996; November 2, 1996, a Saturday, but only until 4 :00 p.m., when he was back in Sacramento; November 9-10, 1996; November 16-17, 1996; December 7-8, 1996; March 15-16, 1997; March 29-30, 1997; July 11, 1997, a Friday, but only until 5:00 p.m. to Milpitas, California. That leaves 26 other weekends between August 1997 and January 1998 unaccounted for; 128 other weekends between September 1994 and May 1997 unaccounted for; and 95 other weekends between December 1995 and December 1997 unaccounted for. That left plenty of opportunities on most weekends for petitioner to have committed the charged crimes.

Thus, even if the log books had been presented, they would not have made any difference in the outcome of the trial. Nor does petitioner attach any reasonably available documentary evidence from any witness; to attest to any further weekends, beyond those in the log books attached to the petition, in which it would have been physically impossible for petitioner to have committed the crimes. As such, the claim fails under Strickland, Swain, Harris, and Bower.

In his sixteenth and final claim Petitioner claims that appellate counsel was ineffective by failing to raise the issues of improper questions propounded by the prosecution, prosecutorial misconduct for propounding the questions, and error by the trial court in denying Petitioner's motion for a new trial.  In rejecting those claims, the California Superior Court held:

Petitioner's final claim is that appellate counsel was ineffective in failing to raise on appeal that the trial court erred in denying petitioner's mistrial motion, during trial, when the prosecutor asked petitioner's son, a victim in the case, what he thought should happen to petitioner.

Again, petitioner does not demonstrate that the error was not cured in front of the jury, or that, in any event, had the question not been asked , there was a reasonable probability that petitioner would not have been found guilty on the various counts. As such, the claim fails under Strickland, Swain, Harris, and Bower.

The record in this case shows that the trial court sustained the objection to the question that Petitioner asserts constituted a basis for a mistrial.  Petitioner cites no authority for the proposition that denial of the motion under the facts in this case was reversible error and independent research by this court has failed to find any such authority.

In his petition before this court, Petitioner fails to make any greater showing that he did before the California Superior Court.  The California court clearly applied the correct standard (*Strickland*) in each of Petitioner's claims of ineffective counsel. This Court can not say on the record before it that the California Superior Court unreasonably applied the correct legal principle to the facts of the prisoner's case; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. *Lockyer–Williams*.  Petitioner is not entitled to relief under claim 12, 13, 14, 15 and 16.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).  All issues raised in the petition were addressed by the California Court of Appeal or the California Superior Court in their respective decisions and no reasonable jurist could find that either decision was "objectively unreasonable."

Dated at Anchorage, Alaska this 19th day of June, 2006.

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge
